Argued and submitted December 14, 1990, affirmed February 13,
reconsideration denied June 5, petition for review pending 1991

# CLACKAMAS TOWN CENTER ASSOCIATES,
and Hahn Property Management Corporation,
*Respondents,*

*v.*

## Donna WOLF,
Lloyd Marbet,
Forelaws on Board/Don't Waste Oregon
and John Doe 1 to 100,
*Appellants.*

(88-3-352; CA A61885)

806 P2d 146

Gregory Kafoury, Portland, argued the cause and filed the briefs for appellants.

Lee Aronson, Portland, argued the cause for respondents. With him on the brief was Schulte, Anderson, DeFrancq, Downes & Carter, P.C., Portland.

Ridgway K. Foley, Jr., P.C., Bernard M. Ryan and Schwabe, Williamson & Wyatt, Portland, filed a brief *amicus curiae* for Washington Square, Valley River Shopping Center, Oakway Center and Pioneer Place.

Before Warren, Presiding Judge, and Riggs and Edmonds, Judges.

EDMONDS, J.

**EDMONDS, J.**

Defendants appeal an injunction restricting their initiative petition signature gathering activities in plaintiffs' shopping center. On *de novo* review, we affirm.

Clackamas Town Center (Center) is a retail shopping mall that consists of 185 shops, five department stores, professional and business offices and a skating rink. It is a fully-enclosed two-level complex that is surrounded by a parking lot. It is owned by plaintiff Clackamas Town Center Associates and managed by plaintiff Hahn Property Management Corporation. Defendants Forelaws on Board and Don't Waste Oregon, of which defendants Wolf and Marbet are principals, are organizations that gather signatures for initiative petitions. Defendants solicited signatures in Center by walking in the mall and approaching patrons. Center's management objected and asked defendants to comply with certain rules that would restrict their activities while in Center. Defendants refused. Plaintiffs then obtained an injunction[1] that restricts

---

[1] The final injunction prohibited defendants from violating Center's amended rules 2, 5, 6, 7, 8, 9, 10, 11, 12, 14, the first two sentences of amended rules 1 and 4, and rule 3 (on the condition that, with respect to rule 3, plaintiffs would have to designate a petitioning area in Cedar Court). Only rules 3, 4, 6 and 12 are at issue here. They read:

"3. Each applicant shall restrict the applicant's political petitioning activity to that portion of the Center property assigned to the applicant by Center management. The portions of Center property from which the assignment will be made are identified in Exhibit A. These areas were selected by Center management after considering the size and physical design of the Center's common areas, the width of the corridors, the placement of permanent and semi-permanent objects such as planters and benches in common areas, and the necessity for maintaining an unobstructed traffic flow for the furtherance of the legitimate business interests of the Center and its tenants. Access for political petitioning may be denied at the times requested if the areas designated in Exhibit A are unavailable because of previously scheduled Center-sponsored events. The available areas will be assigned to applicants on a first-come, first-served basis each day.

"4. The number of applicants who may engage in political petitioning on Center property at a particular time shall be limited to a maximum of two (2) persons in each area designated on Exhibit A. In order to ensure equitable access to all applicants seeking to engage in political petitioning on Center property, an applicant may be granted access to more than one area for the same time only if there are no other applicants seeking access to the additional area for the same day and time. Applicants requesting access to more than one area for the same date and time must contact Center management two business days before the requested date to determine the availability or nonavailability of additional areas.

"6. In order to preserve the ambience and appearance of the common areas, only that furniture provided by Center management shall be used on Center property for political petitioning. The Center will provide a table and two chairs

petitioning to a maximum of two persons in each of four designated areas[2] and requires that those persons stay within five feet of a table provided at each location.

Defendants argue that the evidence does not support the imposition of restrictions and urge us to apply a constitutional "least restrictive means" standard, which means that restrictions must be "narrowly drawn" to a legitimate end. They assert that we should uphold the injunction only if there is evidence that the signature gatherers caused actual disruption or interference with the free flow of business traffic in Center. Witnesses testified that the three areas located near Center's entrances are undesirable for signature gathering, because "very few people come through those doors," that the requirement to stay within five feet of the tables is too restrictive and that there is no evidence that free-roaming signature gatherers ever impeded the flow of foot traffic at Center. They also testified that, when allowed to engage in "free-roaming" signature gathering, they are able to collect about one signature each minute, but when they are confined to a table, they collect only 5 to 10 signatures per hour.

Plaintiffs argue that the restrictions are reasonable, because they are designed to reduce or eliminate interference with commercial activity at the Center and distraction of customers and to prevent safety hazards, without prohibiting the activities. Several witnesses testified that many patrons do not like being approached, that free-roaming signature gathering has an adverse effect on Center's business activities and that the areas designated for petitioning are "well-trafficked." The witnesses also testified that the restrictions prevent confrontations between the signature gatherers and

---

for each applicant. This furniture shall be located in the designated area shown on Exhibit A, as prescribed by the Center management office, to ensure minimum interference with traffic flow and to protect the safety and free passage of all persons in the Center.

"12. While engaging in petitioning activity, each applicant must stay within the area assigned by Center management and shown on Exhibit A. If a table is being used, the applicant must stay within five (5) feet of the table at all times in order to minimize interference with traffic flow. If no table is being used, the applicant must remain within the boundaries shown on Exhibit A for the area designated. Applicants shall not "buttonhole" Center patrons. Under no circumstances are applicants allowed to enter tenant premises to conduct political petitioning activity."

[2] Three of the areas are adjacent to major entrances to Center, and one is located in Cedar Court, a large area inside Center.

other groups that support conflicting causes, that there have been instances when attempts have been made to collect signatures from people as they were leaving an escalator, thereby creating a risk of injury and that, by restricting signature gathering to designated areas, security staff can more easily monitor complaints.

This case is controlled in part by *Lloyd Corporation v. Whiffen,* 307 Or 674, 773 P2d 1294 (1989), in which the plaintiff obtained an injunction that barred the defendants from petitioning in the common areas of the plaintiff's shopping mall. The Supreme Court concluded:

> "The trial court went too far in issuing an injunction providing that 'defendants are hereby enjoined from entering upon plaintiff's private property to exercise their expressions of opinion or to gather signatures in the initiative and referendum process without plaintiff's permission or consent.' Clearly they can if they do so reasonably and peaceably. Moreover, plaintiff is not entitled to an injunction to prohibit peaceful solicitation of signatures in the mall or on its walkways that does not substantially interfere with the commercial activity on the premises. * * *

> "The court may, however, issue an injunction imposing reasonable restrictions on any attempted possession (*e.g.,* setting up card tables) by defendants of any part of plaintiff's premises and may also place *reasonable restrictions on the time, place and manner of seeking petition signatures in plaintiff's mall* or on its walkways so as to reduce or eliminate interference and distraction, short of confining signature solicitors to the least traveled byways and to times when few people are at the Center. The number of petition signature-gatherers may also be limited." 307 Or at 687. (Emphasis supplied.)

■     We disagree with the proposition advanced by defendants that plaintiffs may prevail only if they prove actual injury from defendants' activities. Injunctive relief "is designed to prevent harm, not redress harm." *Klinicki v. Lundgren,* 298 Or 662, 695 P2d 906 (1985). Accordingly, plaintiffs need not wait for actual injury to occur before seeking an injunction to protect their property interests.

■■     We also disagree with defendants' assertion that the constitutional "least restrictive means" test is applicable. Although defendants have no federal constitutional right to

solicit signatures on private property, *Lloyd Corp. v. Tanner,* 407 US 551, 92 S Ct 2219, 33 L Ed 2d 131 (1972), that right is protected under the Oregon Constitution. In *State v. Cargill,* 100 Or App 336, 348, 786 P2d 208, *rev allowed* 310 Or 133 (1990), we held that, under Article IV, section 1, initiative signature gatherers may not be prevented from soliciting signatures in

"[a]reas that have replaced traditional forums for the collection of signatures, so long as there is no substantial interference with the owner's use of the property for business or other purposes."

*Cargill* recognized a constitutional right that was not discussed in *Lloyd Corporation v. Whiffen, supra,* where the Supreme Court said that it was not necessary to engage in a constitutional analysis because,

"[i]n this case, if a declaratory judgment and injunction properly applies equitable principles, it also will not violate the constitutional rights of [the landowner]." 307 Or at 688.

From that conclusion it necessarily follows that reasonable restrictions on petitioning also will not violate the constitutional rights of the signature gathers, if the restrictions "properly appl[y] equitable principles."

■ The evidence supports imposition of the restrictions. Although they limit defendants' ability to gather signatures, they are reasonable, because they do not unduly limit defendants' opportunities to carry out the initiative process; that is, they do not confine defendants to little traveled areas of the mall nor limit soliciting to times when few people are present. Additionally, they are reasonably related to preventing substantial interference with the business concerns of Center. The trial court did not err in granting the injunction.

Affirmed.